1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN FLEMING, | CASE NO. 09-CV-902-IEG (WMc) |
| Plaintiff, | **ORDER:** |
| vs. | **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 7); and** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | **(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT(Doc. No. 8).** |
| Defendant. | |

Karen Fleming on behalf of Plaintiff Edward Fleming ("Plaintiff"), proceeding by and through counsel, has filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant") final decisions denying Plaintiff's applications for benefits under Title II and Title XVI of the Social Security Act for May 15, 2000 to March 1, 2007.  Plaintiff moves the Court for summary judgment reversing the decisions and ordering an award of benefits.  (Doc. No. 7.)  Defendant has filed a cross-motion for summary judgment, asking the Court to affirm the denial of benefits.  (Doc. No. 8.)

These motions are appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1).  For the reasons stated herein, the Court DENIES Plaintiff's

27
28

motion for summary judgment and GRANTS Defendant's cross-motion.

**BACKGROUND**

**I.      Factual Background**

Plaintiff was 47-years-old on his alleged onset date of disability of May 15, 2000. Plaintiff's medical reports span the period of 1997 to 2007 and document Plaintiff's conditions of diabetes, diabetic retinopathy, hepatitis C, hypertension, a right knee meniscul defect, mild obesity, depression and marijuana abuse.  Plaintiff was diagnosed with lung cancer on June 12, 2007.  Plaintiff was 55-years-old when he died of lung cancer on March 24, 2008.

**II.     Procedural History**

On May 16, 2005, Plaintiff protectively filed initial applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI, alleging a disability onset date of May 15, 2000.[2]  (Administrative Record Transcript ("Tr.") at 205-209.)  The Social Security Administration (the "agency") denied the applications initially on June 27, 2005, and Plaintiff did not appeal.  (Tr. at 102.)

On November 30, 2005, Plaintiff applied for DIB and SSI, alleging a disability onset date of May 15, 2000.  (Tr. at 210-21.)  The Social Security Administration (the "agency") denied Plaintiff's applications initially on February 3, 2006, and upon reconsideration on May 15, 2006. (Tr. at 91-92, 107-16.)

On July 15, 2006, Plaintiff timely filed a hearing request.  (Tr. at 117.)  On February 8, 2007, Plaintiff appeared without counsel for a hearing before Administrative Law Judge Wurzel (the "ALJ").  (Tr. at 25-45.)  The ALJ rescheduled the hearing to allow Plaintiff to retain counsel, and later dismissed Plaintiff's hearing request when Plaintiff subsequently failed to appear.  (Tr. at 29-45, 46-51, 93-98.)  The Appeals Council vacated the dismissal and remanded for a hearing.

---

[2]DIB is available to individuals who have worked in recent years and who are now disabled, and is paid based upon an individual's Social Security earnings record, regardless of income or assets.  See 42 U.S.C. §§ 401-33.  SSI, on the other hand, is available to individuals who are disabled and meet certain income and asset limits.  See 42 U.S.C. §§ 1381-83f.

(Tr. at 178-80.)

Subsequently, on May 22, 2007, Plaintiff filed new concurrent applications for DIB and SSI.  (Tr. at 583-87.)  The agency allowed the SSI application due to lung cancer, with an onset date of March 13, 2007.  (Tr. at 588-602.)  However, the agency denied the DIB application because Plaintiff was last insured for DIB on September 30, 2006.  (Tr. at 101, 222.)

On March 24, 2008, Plaintiff died of lung cancer. (Tr. at 185.)  Plaintiff's wife, Karen Fleming, was substituted as party.  (Tr. at 184.)  On July 31, 2008, pursuant to the Appeals Council's remand, the ALJ held a hearing on the November 30, 2005 applications.  (Tr. at 52-89.)  The ALJ heard testimony from Plaintiff's wife, who was represented by counsel, and from a vocational expert.  On December 31, 2008, the ALJ denied the DIB application because Plaintiff was last insured for DIB on September 30, 2006, and allowed the SSI application with an onset date of March 1, 2007. (Tr. at 4-24.)  The decision became final when the Appeals Council declined to change the ALJ's decision on its own motion within 60 days of the decision.

On April 29, 2009, Karen Fleming on behalf of Plaintiff filed this action for judicial review.  (Doc. No. 1.)

**DISCUSSION**

**I.      Standard of Review**

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final decision of the Commissioner.  42 U.S.C. § 405(g).  This Court has jurisdiction to review the Commissioner's benefits decision and "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a hearing."  42 U.S.C. § 405(g).

The Commissioner's denial of disability benefits will only be disturbed if the ALJ's findings are based on legal error or are not supported by substantial evidence.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).  "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

3

accept as adequate to support a conclusion."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  In determining whether there exists substantial evidence to support the ALJ's finding, the court must weigh both the evidence that supports and the evidence that detracts from the ALJ's conclusion as that evidence exists in the record.  Id.  "Where the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision."  Mayes, 276 F.3d at 459 (citation omitted).

## II.      Five-Step Process for Determining Whether Claimant is "Disabled"

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) he or she suffers from a medically determinable impairment that can be expected to result in death or has lasted, or can be expected to last, for a continuous period of twelve months or more; and (2) the impairment renders the applicant incapable of performing the work that the applicant previously performed and incapable of performing any other substantially gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  An applicant must meet both requirements to be "disabled."  Id.

The Social Security Regulations employ a five-step process to determine whether an applicant is physically disabled under the Act.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed to subsequent steps.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  Although the ALJ must assist the applicant in developing the record, the applicant bears the burden of proof as to the first four steps. Id.  If the fifth step is reached, the burden shifts to the Commissioner to rebut the finding of disability.  Id.  The five steps are as follows:

(1)      Is the claimant presently working in any substantially gainful activity?

(2)      Is the claimant's impairment severe?

(3)      Does the impairment meet or equal one of a list of specific impairments?

(4)      Is the claimant able to do any work that she has done in the past?

4

(5)     Is the claimant able to do any other work that exists in significant numbers in the national economy?

20 C.F.R. § 416.920; see also Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (describing the five step sequential evaluation process).

**III.     The ALJ's Decision**

The ALJ utilized the five-step eligibility test to analyze Plaintiff's claim.  At step one, the ALJ found that Plaintiff was not presently engaged in substantial gainful employment.  (Tr. at 12.)  At step two, the ALJ found that Plaintiff had several impairments that in combination are considered "severe."  At step three, the ALJ found that Plaintiff's impairments did not meet or equal one of a list of specific impairments.  (Tr. at 14.)  At step four, the ALJ found that Plaintiff was not able to do any work that he had done in the past.  (Tr. at 21.)  Finally, at step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform.  (Tr. at 22.)

Based on Plaintiff's DIB application, the ALJ concluded that Plaintiff was not disabled at any time from the alleged onset date of May 15, 2000 through his date last insured on September 30, 2006.   Based on Plaintiff's SSI application, the ALJ concluded that Plaintiff was disabled beginning on March 1, 2007, but not before that date, and continued to be disabled through the date of his death on March 24, 2008.  (Tr. at 23.)

The ALJ made the following specific findings:

1.     The claimant met the insured status requirements of the Social Security Act on the alleged onset date of May 15, 2000, and continued to meet them through September 30, 2006, but not thereafter.

2.     The claimant did not engage in substantial gainful activity after May 15, 2000, the alleged onset date.

3.     From the alleged onset date of May 15, 2000, through February 28, 2007, the claimant had the following medically determinable impairments that in combination are considered "severe" under the Social Security Act and regulations: Insulin-dependent diabetes mellitus (onset November 2005); hepatitis-C, treated with Interferon in 1997 and controlled thereafter with only mildly elevated liver function testing and no history of stigmata; hypertension, controlled when he took his medication; radiographic evidence of meniscal and ligament pathology, right knee, in 1998, without longitudinal history of complaint or treatment thereafter; nonproliferative diabetic retinopathy with excellent visual acuity      (20/25 right, 20/20 left, best corrected); mild obesity (onset June 2006); major

5

depressive       disorder (onset May 2007); and marijuana abuse.

4.    On March 1, 2007, five months after the date last insured, the claimant first became symptomatic with what proved to be terminal lung cancer resulting in his death on March 24, 2008.

5.    Since the alleged onset date of disability, both with and without drug addiction and alcoholism (DA & A) included in the assessment, the claimant did not have any impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6.    After careful consideration of the entire record, the undersigned finds that from the alleged onset date of May 15, 2000, through February 28, 2008, both with and without drug addiction and alcoholism (DA & A) included in the assessment, the claimant retained the residual functional capacity to perform work activity at the light exertional level, lifting carrying 10 pounds frequently, and 20 pounds occasionally, and sitting, standing and walking for six hours each per eight-hour workday; occasionally pushing and pulling in the operation of machinery with the right lower extremity; with the following nonexertional limitations: never climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs; occasionally stooping and crouching; never balancing, kneeling or crawling; and mentally limited to unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, and the public.

7.    At all times on and after the alleged onset date of disability, the claimant was unable to perform any of his past relevant work.

8.    Born on November 12, 1952, the claimant was 47 years old on his alleged onset date of May 15, 2000, which is defined as a younger individual; 53 years old when his insured status expired on September 30, 2006, which is defined as an individual close approaching advanced age; and 55 years old at the time of his death on March 24, 2008, which is defined as an individual of advanced age.

9.    The claimant had a high school equivalence (GED) education and was literate and able to communicate in English.

10.   The claimant had no transferable skills.

11.   From his alleged onset date of May 15, 2000, through February 28, 2007, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could perform and sustain on a regular and continuing basis.

12.   From March 1, 2007, until his death on March 24, 2008, both with and without drug addiction and alcoholism (DA & A) included in the assessment, in addition to all limitations found above, the claimant was further limited to lifting and carrying up to 10 pounds; and to sitting, standing and walking, in combination, for seven hours per day and for 35 hours per week.

13.   From March 1, 2007, until his death on March 24, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were not a signifant number of jobs in the national economy that the claimant could perform and sustain on a regular and continuing basis.

6

14.    The claimant was not disabled prior to March 1, 2007, but became disabled on that date and continued to be disabled through the date of his death on March 24, 2008.

15.    Drug addiction and alcoholism (DA & A) are NOT contributing factors material to this determination of disability within the meaning of Public Law 104-121.

## IV.    Plaintiff's Allegations of Error

Plaintiff challenges the ALJ's decision finding him not disabled before March 1, 2007. The Court addresses each of Plaintiff's eight allegations of error in turn.

### A.    The ALJ erred in relying on the testimony of the vocational expert, which was in conflict with the Dictionary of Occupational Titles.

Plaintiff contends that the ALJ erred in his analysis at step five.  At step five, the ALJ asks whether the claimant is able to do any other work which exists in significant numbers in the national economy, considering the claimant's residual functional capacity ("RFC").   Here, the ALJ found that Plaintiff had the RFC for work mentally limited to "unskilled work."  (Tr. at 15.)  Social Security Regulations define unskilled work as work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R § 416.968(a). Based on the vocational expert's ("VE") testimony, the ALJ found that Plaintiff could perform three jobs: bench assembler, packing line worker, and hand washer.  (Tr. at 22-23.)

Plaintiff contends that the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), because the jobs require a reasoning level which conflicts with Plaintiff's RFC for unskilled work.  Plaintiff also notes that the ALJ gave great weight to State agency psychiatric consultant K.J. Loomis' opinion, and Dr. Loomis opined that Plaintiff was limited to "simple repetitive tasks." (Tr. at 18, 559.)  All three jobs have a DOT reasoning level of 2, which requires the worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."  DOT 1011 (4th ed. rev. 1991) (emphasis added).  Plaintiff argues that the ALJ erred in failing to resolve this conflict.[3]

_____

[3]Plaintiff also argues the ALJ created an additional conflict by relying on the expert's testimony in adopting that Plaintiff's past relevant work included auto detailer, security guard, cashier II, and cook. This is irrelevant because the ALJ found that Plaintiff could not perform any past relevant work.  (Tr.

However, as Defendant argues, courts have found that a DOT reasoning level of 2 is consistent with an RFC for unskilled work and simple, repetitive work.  See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (level-two reasoning is consistent with an RFC for simple and routine work tasks); Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005) (plaintiff's ability to perform "simple tasks . . . that had some element of repetitiveness to them" indicated a reasoning level of 2). Plaintiff cites no authority for the proposition that a DOT reasoning level of 2 conflicts with an RFC for unskilled work or for simple, repetitive work.  Also, although Plaintiff emphasizes that a reasoning level of 2 involves "detailed" instructions, Plaintiff ignores the DOT's qualifier that the instructions must also be "uninvolved."  See id.

In addition, as Defendant argues, all three jobs have a DOT Specific Vocational Preparation ("SVP") of 2, which is consistent with an RFC for unskilled work.  (Tr. 22, 83.)  SVP is a separate vocational consideration defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT, Appx. C, Pt. II.  An SVP of 2 represents work that requires "[a]nything beyond a short demonstration up to and including one month."  DOT, Appx. C, Pt. II.

Therefore, the ALJ did not fail to resolve any conflict between the VE's testimony and the DOT.

**B.      The ALJ erred in not considering Plaintiff's symptoms within Plaintiff's RFC.**

Plaintiff argues that the ALJ, in determining Plaintiff's RFC, erred in not considering Plaintiff's symptoms of fatigue, insomnia, and heptomegaly (an enlarged liver).  Plaintiff also contends that the ALJ erred in not including a work limitation due to fatigue in the hypothetical questions to the VE.[4]

_____

at 21.)

[4]Plaintiff's attorney submitted to the VE the ALJ's hypothetical, but with the limitation that Plaintiff would miss one day of work per week due to fatigue, and the VE responded that Plaintiff would be unable to sustain work activity.  (Tr. at 84.)

Plaintiff produced evidence of symptoms of fatigue and insomnia in the form of his December 2005 report of his activities of daily living (Tr. at 270, 274), his disability report appeals forms (Tr. at 295, 298, 302, 311, 314, 317), and medical records indicating his subjective complaints (Tr. at 527, 529, 531, 372-73, 399, 435, 509-11, 507).  In addition, Plaintiff's wife produced evidence in the form of her December 2005 report of his activities of daily living (Tr. at 262, 263, 266) and her testimony at the hearing. (Tr. at 56-88).  Plaintiff's wife testified that, starting in the summer of 2003 until the winter of 2004, Plaintiff experienced fatigue that would keep him in bed for two to three days a week.  (Tr. at 57-6.)  She further testified that beginning in September of 2005, while Plaintiff worked as a gas station attendant, he would come home early from work approximately two days a week because he was tired.  (Tr. at 70.)

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ must perform a two-step analysis:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Unless there is affirmative evidence of malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) ( internal citation omitted).  "[T]he claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

"[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). "To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to

9

seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id.

The ALJ found Plaintiff had impairments that in combination are considered "severe," including depression, insulin-dependent diabetes mellitus, obesity, hepatitis C, and hypertension. (Tr. at 12.) The ALJ did not find that these impairments could not reasonably have caused some degree of Plaintiff's symptoms, nor make a finding of malingering. Therefore, the ALJ was required to give "clear and convincing reasons" for rejecting Plaintiff's allegations. See Reddick, 157 F.3d at 722.

The ALJ's finding that Plaintiff's "subjective allegations of debilitating pain and disabling functional limitations" were not fully credible for the period prior to March 1, 2007 was supported by clear and convincing reasons. (Tr. at 18, 21.) First, the ALJ emphasized that Plaintiff had a very poor work record long before he allegedly became unable to work, explaining that this reflected poorly on his motivation for gainful employment. (Tr. at 19.) Plaintiff was virtually unemployed for nine years, and earned over $10,000 in only three years in his entire life. (Tr. at 19.)

Second, the ALJ drew the inference from Plaintiff's lack of candor about his history of marijuana abuse that he was not truthful about his allegations of debilitation. (Tr. at 19.) See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (an ALJ can properly take into account that claimant has been less than candid in other aspects of his testimony in determining whether subjective allegations should be believed).

Third, the ALJ found that prior to the onset of lung cancer in March 2007, Plaintiff's subjective complaints were significantly out of proportion to objective pathology. The ALJ made the following findings based on the medical evidence: Plaintiff's diabetic retinopathy was nonproliferative and the biggest problem was that Plaintiff needed glasses; his hypertension and hepatitis-C were controlled; his liver function was only mildly elevated; there is no record of complaint or treatment for knee pain; he did not become even mildly obese until June 2006; his

10

diabetes was consistently well-controlled; and Plaintiff remained stable despite his depression and discontinuance of medication first prescribed in March 2006. (Tr. at 19-20.)

Fourth, the ALJ remarked on Plaintiff's inadequately explained failure to seek treatment. (Tr. at 20.)  See Fair, 885 F.2d at 603 (an ALJ can rely on an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment to find subjective allegations incredible).  The ALJ found that despite complaints of debilitation, Plaintiff failed to seek medical treatment between early 2002 and late 2005.  (Tr. at 20.)  The ALJ determined that this could not persuasively be blamed on a lack of money because Plaintiff had money for marijuana and cigarettes.  (Tr. at 20.)  See Fair, 885 F.2d at 603 ("[A] finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.").  Finally, the ALJ noted that prior to the onset of lung cancer in March 2007, Plaintiff had never been maintained on strong analgesics (painkillers).  (Tr. at 20.)

Next, the ALJ gave little weight to Plaintiff's allegations of debilitation in his December 21, 2005 report of daily activities.  (Tr. at 20.)  Plaintiff reported that he used to be able to work and exercise, but now does not have the energy.  (Tr. at 270.)  The ALJ explained that in December 2005, when Plaintiff filed the report, Plaintiff had just been diagnosed with diabetes and started treatment for new onset diabetes.  (Tr. at 20.)  The ALJ noted that Plaintiff's treating physician opined that his diabetes was consistently well-controlled on and after March 2006.  (Tr. at 20.)  Thus, the ALJ remarked that even if the allegations were true, they did not mean much, and the record did not show that the symptoms Plaintiff reported when he was diagnosed with diabetes continued for 12 continuous months.[5]  (Tr. at 20.)   In addition, the ALJ pointed out the inconsistency between Plaintiff's assertion that his vision was so poor he had trouble shaving, and the fact that he drove a motor vehicle with his grandson in the vehicle.  (Tr. at 20, 270, 272.)  Although this last inconsistency does not explain how Plaintiff's symptoms of fatigue, insomnia,

---

[5] To qualify for disability benefits, an applicant must show he or she suffers from a medically determinable impairment that can be expected to result in death or has lasted, or can be expected to last, for a continuous period of twelve months or more.  42 U.S.C. § 423(d)(2)(A).

and heptomegaly are incredible, the other evidence discussed above supports the ALJ's finding that Plaintiff's subjective symptom testimony was not fully credible.

The ALJ then considered Plaintiff's wife's testimony and found it not fully credible. (Tr. at 20.) When an ALJ discounts the testimony of lay witnesses, "he [or she] must give reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993). The ALJ must "tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." Valentine v. Comm'r Social Sec. Admin, 574 F.3d 685, 694 (9th Cir. 2009). Here, the ALJ explained that, in addition to her "familial bias and direct pecuniary interest in the outcome of her husband's disability claim," her testimony was subject to the same analysis as her husband's. (Tr. 20). Because the Court concludes that the ALJ provided clear and convincing reasons for rejecting Plaintiff's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting Plaintiff's wife's testimony. In addition, the ALJ noted that Plaintiff's wife testified Plaintiff had no history of drug abuse (Tr. at 72), but the record shows he clearly did, and that she testified her husband always wanted to work and went to work whether he felt well or not (Tr. at 66), but the record shows Plaintiff had a very poor work record. (Tr. at 20.)

Substantial evidence supports the ALJ's decision not to fully credit Plaintiff's or his wife's subjective allegations. Accordingly, the ALJ was not required to include fatigue in the hypothetical posed to the VE. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (hypothetical need not include limitations outside of the RFC or properly rejected subjective complaints).

**C.    The ALJ failed to grant controlling weight to the opinions of Plaintiff's treating physicians without making appropriate findings.**

In determining Plaintiff's RFC, the ALJ gave little weight to examining psychiatrist Dr. Jaga Glassman's Global Assessment of Functioning (GAF) score of 40 for the year prior to

Plaintiff's examination on May 2, 2007.[6]  (Tr. at 17, 494).  Plaintiff argues that the ALJ's reasons for granting little weight to Dr. Glassman's opinion were not specific or legitimate.

Where the treating doctor's medical opinion is contradicted by other examining opinions, the ALJ may reject the treating doctor's opinion as long as the ALJ provides "specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Id.

However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004) (quoting Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)).  "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted."  Batson, 359 F.3d at 1195 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)).  "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ gave little weight to Dr. Glassman's opinion, and provided specific, legitimate reasons which were based on substantial evidence.  The ALJ explained that Dr. Glassman's assessment was based on subjective complaints, and not clinical evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (the ALJ properly rejected psychological assessment because opinion was based on subjective complaints, not medical data or reports).  Dr. Glassman reported no psychological testing or formal clinical testing of cognitive functioning and "had no basis whatsoever for his assessment of GAF during the past year." (Tr. at 17, 492-95).

---

[6]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  McGhee v. Barnhart, 366 F. Supp. 2d 379, 383 n.4 (W.D. Va. 2005) (quoting Diagnostic And Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994)).  A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . . ." Id.

The ALJ explained that Dr. Glassman's assessment was based almost entirely on Plaintiff's self-reported history and symptomology, and that the ALJ found Plaintiff not fully credible.  (Tr. at 17.)   As the Court already concluded, substantial evidence supports the ALJ's decision not to fully credit Plaintiff's subjective symptom testimony.  Finally, the ALJ noted that GAF assessments by definition, apply only to "the time of the evaluation" and are not intended as a measure of "occupational disability."  (Tr. at 17.)

Plaintiff argues that the ALJ's reasoning is faulty, because under this rationale, the ALJ would have to reject the opinion of Dr. Loomis, to which the ALJ assigned great weight, because it was based upon Plaintiff's subjective complaints as well.  However, the ALJ explained that Dr. Loomis "had the benefit of the entire record" when he rendered his opinion in July 2007, and that his opinions "are generally consistent with the record as a whole," and "are not contradicted by other substantial evidence of record." (Tr. at 18, 546-62.)

Accordingly, substantial evidence supports the ALJ's decision to assign little weight to Dr. Glassman's opinion.

### D. The ALJ's decision failed to review substantial evidence that Plaintiff's lung cancer symptoms became disabling prior to March 1, 2007.

Plaintiff argues that the ALJ failed to review substantial evidence that Plaintiff's lung cancer became symptomatic and disabling prior to March 1, 2007.

The ALJ concluded that Plaintiff's lung cancer became symptomatic and disabling on March 1, 2007.  (Tr. at 14.)  Plaintiff's examining physician, Dr. Lyudmila Bazhenova, gave no opinion about the date of onset of the disease.  (Tr. at 16, 563.)  Based on the medical evidence, the ALJ found that Plaintiff's lung cancer was aggressive and not symptomatic until two weeks prior to his emergency room visit on March 16, 2007.  Medical records show that on March 1, 2007, Plaintiff suddenly began experiencing pulmonary symptoms.  Chest x-rays on March 8, 2007 only showed a "slightly prominent mediastinum," prompting further study to rule out adenopathy.  (Tr. at 16-17, 503.)  On March 16, 2007, Plaintiff reported chest pain that "started two weeks ago" and was "sudden in onset" with associated symptoms including productive cough,

night sweats, shortness of breath, and decreased appetite with weight loss.  (Tr. at 14, 480.)  On March 16, 2008, an angiogram showed that a right hillar adenopathy had developed. (Tr. at 14, 478).  On May 21, 2007, a CT scan of the chest was "quite suggestive of bronchogenic carcinoma"(Tr. at 14, 520), and by May 30, 2007, the right hillar mass had become "huge" (Tr. at 14, 543).  Cancer was definitively diagnosed by biopsy on June 12, 2007.   (Tr. at 14, 514-515.)

Plaintiff, on the other hand, points to the following evidence of alleged lung cancer symptoms prior to March 1, 2007:[7] coughing up blood in December 8, 1999 (Tr. at 348); sore throat in November 23, 2005 (Tr. at 377); nasal congestion and nosebleeds in January 3, 2006 (Tr. at 412); history of sinus infections and dry cough in June 26, 2006 (Tr. at 436).  Plaintiff's March 1, 2006 medical record reports: "[Plaintiff] is concerned that he has had an upper respiratory infection for the past 3 days" and reports symptoms of minimal chills, nasal congestion, epistaxis, occasional coughing with white phlegm with a burning in his chest when coughing, shortness of breath with carrying heavy loads while walking.  (Tr. at 399.)  Plaintiff's October 16, 2006 medical record reports Plaintiff had been spitting up blood for a week.  (Tr. at 511.)  Plaintiff's May 21, 2007 medical record reports that Plaintiff stated he had episodes of "blood sputum" that occurred "several months prior but not in the last few months." (Tr. at 519.)

As Defendant argues, Plaintiff has not shown that these symptoms were lung cancer symptoms and disabling.  Plaintiff's June 26, 2006 medical record reports Plaintiff's statement that he was "[f]unctioning well." (Tr. at 436.)  In January, March, May and June of 2006, Plaintiff expressly denied chest pain, chest pressure, and shortness of breath.  (Tr. at 427, 433, 435-36.) The first indication of any collapse or compression of the lung was not until March 16, 2007.  (Tr. at 520.)  On May 21, 2007, Plaintiff reported that he "was in his normal state of health until early March [2007] when he began feeling chest pain." (Tr. at 519.)

Substantial evidence supports the ALJ's finding that Plaintiff's lung cancer was aggressive and became symptomatic and disabling on March 1, 2007.  To the extent the evidence could

---

[7]Plaintiff argues that the ALJ failed to consider the March 16, 2007 record which reports symptoms of productive cough,16-pound weight loss, and shortness of breath.  (Tr. 480).  However, the ALJ clearly reviewed this evidence in finding an onset date of March 1, 2007. (Tr. at 16.)

1    rationally be interpreted in more than one way, the Court must uphold the ALJ's decision.  See

2    Mayes, 276 F.3d at 459.

3        **E.**    **The ALJ failed to consider substantial evidence of functional equivalency of**
              **Medical Listing 13.14B prior to March 1, 2007.**
4

5           At step three, the ALJ considers whether the claimant's impairment meets or equals one of

6    a list of specific impairments listed in the Social Security Regulations.[8]  See 20 C.F.R. Part 404,

7    Subpt. P, App. 1.  Plaintiff argues that the ALJ failed to consider substantial evidence of functional

8    equivalency of Medical Listing 13.14B for small-cell (oat cell) carcinoma of the lungs prior to

9    March 1, 2007.

10          To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory

11   findings "at least equal in severity and duration" to the characteristics of a relevant listed

12   impairment.  See 20 C.F.R. 404.1526(a), 416.926(a).  In determining equivalency, the ALJ

13   considers all evidence in the record that is relevant to this finding, in addition to opinions given by

14   State agency medical or psychological consultants, but does not consider vocational factors of age,

     education, and work experience.  Id. 404.1526(c).  The Social Security Regulations provide that
15
     the agency can "establish the existence of a disabling impairment prior to the date of the evidence
16
     that shows the malignancy satisfies the criteria of a listing" by considering factors such as: (1) the
17
     type of malignancy and its location; (2) the extent of involvement when the malignancy was first
18
     demonstrated; and (3) the claimant's symptoms.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 13.00J.
19
            Here, the ALJ found that, since the alleged onset date of May 15, 2000, Plaintiff's
20
     impairments did not individually or in combination equal any of the listed impairments.  (Tr. at
21
     14.)  The ALJ explained that no physician opined that Plaintiff's condition met or equaled a listed
22
     impairment, and four State agency physicians opined that it did not.[9]  (Tr. at 14, 368, 428, 429,
23
     ───────────────────────
24   [8]The list describes specific impairments "which are severe enough to prevent a person from doing any
     gainful activity."  See 20 C.F.R. 404.1525(a), 416.925(a).  If a claimant's impairment meets or equals
25   a listed impairment, he or she will be found disabled at step three.  20 C.F.R. 404.1520(d), 416.920(d).

26   [9]The June 21, 2005 report by a state agency medical consultant concluded that the medical evidence
     of record did not meet or equal a listing for the period May 14, 2000 to June 30, 2001.  (Tr. at 368.)
27   The January 31, 2006 report by a state agency medical consultant concluded there was insufficient
     evidence to make a determination for the same period.  (Tr. at 418.)  The May 10, 2006 report by a

28                                                    16

546.)   The ALJ was permitted to rely on these opinions.  See 20 C.F.R. 404.1526(c).  Contrary to

Plaintiff's assertion, 20 C.F.R. 404.1526(b) does not require the ALJ to inquire into medical

equivalency "with the assistance of an independent medical opinion."

Plaintiff argues that the ALJ did not consider Plaintiff's symptoms or the extent of

involvement when the malignancy was first demonstrated.  However, as discussed in the previous

section, the ALJ considered both factors and concluded, based on Plaintiff's medical records and

subjective symptom testimony, that the cancer was aggressive and not symptomatic until two

weeks prior to his March 16, 2007 emergency room visit.  The ALJ's findings are sufficient for the

Court to ascertain the basis for the decision that Plaintiff's impairments did not meet or equal any

of the listed impairments prior to March 1, 2007.  See Gonzalez v. Sullivan, 914 F.2d 1197, 1200

(9th Cir. 1990) ("The regulations merely require the Secretary to 'review the symptoms,' 20 C.F.R.

§ 404.1526 (1988), and make specific findings essential to the conclusion.").

Accordingly, substantial evidence supports the ALJ's finding as to functional equivalency.

**F.      The ALJ erred in failing to give full consideration to statements by third parties on Plaintiff's behalf.**

Plaintiff argues that the ALJ erred in granting little weight to the statement of Plaintiff's

wife and in not considering the statement of Plaintiff's daughter, Tamisha Fleming.  The ALJ may

consider evidence from non-medical sources, such as relatives, to show the severity of the

claimant's impairment and how it affects his ability to work. See 20 C.F.R. § 404.1513(d).  "If the

ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane

to each witness."  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

As the Court previously concluded, substantial evidence supports the ALJ's decision not to

fully credit Plaintiff's wife's testimony.   With respect to Plaintiff's daughter, Defendant argues

that, although the ALJ did not explicitly discuss her report, he did not reject the substance of it.

state agency psychiatric consultant concluded that Plaintiff's impairments did not meet or equal a
listing for the period May 15, 2000 to May 8, 2006.  (Tr. at 419.)  The July 6, 2007 report by a state
agency psychiatric consultant concluded that Plaintiff's impairments did not meet or equal a listing
for the period May 15, 2000 to July 6, 2007.  (Tr. at 546.)

Plaintiff's daughter's report was dated June 23, 2007, which is *after* the date the ALJ found Plaintiff's lung cancer was symptomatic and disabling.

Therefore, substantial evidence supports the ALJ's treatment of statements by lay witnesses.

**G.      The ALJ's reasons for discrediting Plaintiff's allegations of disabling pain were legally insufficient.**

The Court already concluded that substantial evidence supports the ALJ's decision not to fully credit Plantiff's subjective symptom testimony, which includes Plaintiff's allegations of disabling pain.

**H.      The ALJ's decision violated Plaintiff's constitutional rights.**

Plaintiff argues that the ALJ violated his due process rights because the ALJ failed to address his request to reopen a prior agency determination, and because the ALJ was biased and hostile.  The Court addresses each argument in turn.

Plaintiff's first argument fails.  Plaintiff argues that the ALJ violated his due process rights by failing to address Plaintiff's June 3, 2008 request for the agency to reopen its prior application denial on June 27, 2005.  (Pl.'s Mot. for Summ. J., Ex. A.)  According to Plaintiff, the record contains new and material evidence supporting his request to reopen his prior application, including evidence of lung cancer, diabetes, hypertension, obesity, and hepatomegaly.  However, as Defendant argues, the ALJ effectively reviewed Plaintiff's eligibility for benefits for the period adjudicated by the prior application,  starting from the alleged onset date of May 15, 2000, and considered the entire record, which included evidence about that period.  (Tr. at 9-24, 90, 102.)

Plaintiff also has not made a showing that the ALJ was biased.[10]  "ALJs are presumed to be unbiased."  <u>Valentine v. Comm'r Social Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009) (quoting <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001)).   The presumption "can be rebutted by a showing of conflict of interest or some other specific reason for disqualification. . . . But

_____

[10] Plaintiff contends that the ALJ violated his due process rights because the ALJ had made the decision even before the hearing.  This argument is without merit, because general preconceptions and prejudgments that do not amount to bias do not violate the Due Process Clause. <u>See</u> <u>Valentine v. Comm'r Social Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009).

expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display[,] do not establish bias." <u>Valentine</u>, 574 F.3d at 690 (quoting <u>Rollins</u>, 261 F.3d at 857-58).  To succeed on a claim of bias, Plaintiff must show that "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" <u>Bayliss</u>, 427 F.3d at 1215.

Plaintiff argues that the ALJ demonstrated bias and hostility by attempting to coerce Plaintiff's wife to amend the alleged onset date of disability.  Plaintiff contends that the ALJ found a later onset date of March 1, 2007 because Plaintiff's wife refused the ALJ's repeated requests for her to amend the alleged onset date to November 23, 2005.  Plaintiff points to the following statement by the ALJ:

> I have to really lean over backwards to allow this thing at all any earlier than what the state agency did.  I'm willing to do that for you if you change your date to November the 23rd 2005. If I do this case that way, it's a simple matter to write your decision.  I'll do it myself and it will go out quickly.  If you don't want to change your date then somebody else gets to plow through this whole big record that I'm holding up here and write on and on and on about it.  It will take months to get done.  And if that's what you want, that's your choice, but I'm really not inclined to find an earlier date than the state agency did unless you want to change it . . . .

(Tr. at 87.)  Plaintiff further contends that the ALJ posed "veiled threats" to coerce her to amend the date, by stating that if Plaintiff's wife did not later submit her joint 2004 income tax records, the ALJ would construe it as proof that Plaintiff did not report his earnings, and by pointing out Plaintiff's poor earnings record and history of drug abuse.  (Tr. at 76-77, 87.)

The Court finds that the ALJ's suggestion that Plaintiff's wife amend the alleged onset date did not constitute bias or deprive Plaintiff of a fair hearing.  As Defendant points out, the ALJ explained to Plaintiff's wife that the record supported a March 13, 2007 onset date: "[T]he state agency allowed SSI only with an established onset date of March 13, 2007 . . . . And the record shows that that's a very reasonable date for that.  There's nothing in the record to show that the claimant was even symptomatic prior to March of 2007. . . . I could open it and revise it, but I'm not going to do that because I believe it's correct." (Tr. at 55-56.)  The ALJ explained that if he gave Plaintiff "the maximum benefit of the doubt" and "every conceivable break," he could find

19

Plaintiff disabled on November 23, 2005, but remarked that there "are a lot of reasons on this record for me not to do that." (Tr. at 86-87.) The ALJ asked Plaintiff's wife if she wanted additional time to think about amending the alleged onset date and allowed a break for her to speak with her attorney. (Tr. at 87-88.) After she declined to amend the alleged onset date, the ALJ stated that he would "review the record again" and "consider it further." (Tr. at 88.) For the reasons stated previously, substantial evidence supports the ALJ's finding of a March 1, 2007 onset date.

Plaintiff next argues that his due process rights were violated because the ALJ attempted to coerce Plaintiff to proceed unrepresented by counsel at the initial hearing. This argument also fails. At the initial hearing, the ALJ granted Plaintiff a 30-day continuance to find representation. (Tr. at 35.) After explaining to Plaintiff that his case would be dismissed if he failed to appear at the next hearing, the ALJ told Plaintiff: "I'm giving you the choice of having your hearing today without a representative. Then, take 30 days and go try to find a representative. . . . If you do, I'll reschedule your hearing, and we'll do it all over with a representative. So you don't lose anything that way. If you don't . . . you won't have to come back, and you won't run the risk of having your case dismissed." (Tr. at 35, 39.)

Plaintiff next points to the ALJ's refusal to grant Plaintiff a continuance of his May 10, 2007 hearing. (Tr. at 148-152.) However, as Defendant notes, the ALJ denied the request because he had already previously granted a continuance, with a warning that he would only continue it once, and the ALJ was not aware of the request until the morning of the hearing. (Tr. at 43, 48, 54-55.)

Finally, Plaintiff points to the ALJ's refusal to grant Plaintiff's request to expedite Plaintiff's hearing due to Plaintiff's terminal lung cancer (Tr. at181), and failure to address Plaintiff's complaints about the initial hearing in a letter to the agency, dated June 12, 2007 (Tr. at 158-163). Neither incident constitutes a denial of due process, and Plaintiff has not shown that "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" See Bayliss, 427 F.3d at 1215.

Therefore, the ALJ did not violate Plaintiff's due process rights.

## CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED.  The decision of the Defendant is AFFIRMED, terminating this case.

**IT IS SO ORDERED**.

**DATED:  May 5, 2010**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

21